## SETTLEMENT AGREEMENT

This Agreement made this day by and between WENDY JORGENSEN of Manchester, Maine ("Wife") and DOUGLAS JORGENSEN of Winthrop, Maine, ("Husband").

WHEREAS, the parties were married on March 28, 1992 in Brunswick, Maine;

WHEREAS, the parties are the parents of two children, ~~████████████████~~ ~~████████████████████~~ (the "children");

WHEREAS, an action for divorce which is presently pending in the State of Maine , Augusta District Court for Kennebec County, Docket No. FM-2013-043; and

WHEREAS, the parties are desirous of an arrangement for settlement of parental rights and responsibilities, including child support for the child and for settlement of all property rights as between the parties.

NOW THEREFORE, in consideration of the mutual promises, agreements and covenants expressed in this Agreement and subject to the incorporation of this Agreement in a divorce judgment, it is agreed as follows:

I.     DIVORCE.

The parties shall ask the Court to order the terms of this Agreement and to grant a divorce on the grounds of irreconcilable differences.

II.    PARENTAL RIGHTS AND RESPONSIBILITIES.

1.     The parties shall have shared parental rights and responsibilities of ~~████████████████████~~

"Shared parental rights and responsibilities" means that most or all aspects of a child's welfare remain the joint responsibility and right of both parents, so that both parents retain equal parental rights and responsibilities, and both parents confer and make joint decisions regarding the child's welfare. Matters pertaining to the child's welfare include, but are not limited to, education, religious upbringing, medical, dental and mental health care, travel arrangements, child care arrangements and residence. Parents who share parental rights and responsibilities shall keep one another informed of any major changes affecting the children's welfare and shall consult in advance to the extent practicable on decisions related to the children's welfare.

-1-

2.  Although the parties will also share parental rights and responsibilities for ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, in the event of an impasse on any issue, the following will occur:

    a.  The parties and ▓▓▓▓ hall have a facilitated conversation regarding the issue, using Miranda Phelps (or a mutually agreeable substitute) as a neutral professional facilitator, in an effort to achieve consensus between the parties and ▓▓▓▓

    b.  In the event the impasse remains, both parties and ▓▓▓▓ shall have a vote on the matter in question. The majority vote will control the outcome of the issue presented.

    c.  Should the issue involve travel, both parties shall cooperate with the release of any needed travel documents (including, but not limited to, a passport); provide all documents the Immigration and Naturalization Service, U.S. and foreign departments of state, and transportation (airline, boat, train) agencies require to permit travel.

3.  Each party must have access to records and information pertaining to a minor child, including but not limited to, medical, dental and school records, whether or not the children reside with that parent.

4.  A parent who intends to relocate the residence of a child subject to this Order must provide the other parent prior notice at least 30 days before the intended relocation. If the relocation must occur in less than 30 days, the parent who is relocating shall provide notice as soon as possible to the other parent. If the parent who is relocating believes notifying the other parent will cause danger to the parent or child, the parent shall notify the Court of the intended relocation, and the Court shall provide appropriate notice to the other parent in a manner determined to provide safety to the relocating parent and child.

5.  Both parties shall keep the health and welfare of their minor children paramount, shall not verbally, mentally or physically intimidate their minor children or employ any coercive techniques in an effort to secure the minor child's compliance.

6.  The parties will share provision of a residence for the children on an alternating week basis, with the transfer day being Thursday. Each Monday, the parent with whom the children are not in residence shall have dinner contact with the children.

7.   The following holiday contact schedule shall alternate annually, and shall be the default in the absence of any other arrangement mutually agreed between the parties:

   a.   Thanksgiving, 2013 to Wife and all odd years thereafter. In even years the children will be with Husband. Thanksgiving contact is Wednesday to Friday.

   b.   Christmas, 2013 and all odd years thereafter - Christmas Eve until Christmas Noon and first half of Christmas break with Husband; with Wife from Christmas Day noon and for second half of Christmas break. In even years, this schedule shall reverse.

   c.   Easter, 2014 and all even years thereafter to Wife. In odd numbered years the children will be with Husband. Easter contact is Saturday after dinner until Easter Sunday at 1:00 p.m. at which time the other parent may have the children if he/she desires.

8.   The following holiday schedule will remain the same every year:

   a.   Birthdays - The parties shall each be able to see the child on their birthdays and on the child's birthday, but regular contact schedules shall be maintained.

   b.   Mother's Day to Wife.

   c.   Father's Day to Husband.

   d.   February school vacation will be with Husband every even year and the April school vacation will be with Wife every even year. In odd years, this schedule shall reverse.

9.   Husband and Wife shall cooperate so that required transportation of the Child for visitation, education placement, and extra-curricular activity purposes is shared to the greatest degree possible. The parents shall make all reasonable effort to be on time at the appointed time and place.

10.   Each party shall exert every effort to foster a feeling of affection between the children and the other party. Neither party shall do anything that may estrange either child from the other party nor injure the children's opinion of their mother and father, nor which may hamper the free and natural

development of the children's love and respect for the other party. The parties may freely agree to any different arrangements for exercise of the parental rights and responsibilities and contact rights by either party as future circumstances and the welfare of the Child may require.

III.   CHILD SUPPORT.

1.   Husband shall pay child support to Wife, according to the Maine Child Support Guidelines, in the amount of $2,750.00 per month. (See child Support Order with Child Support Worksheet attached hereto.)

2.   Pursuant to 19-A M.R.S.A. § 2657, support shall be paid via direct deposit into an account of Wife's designation.

3.   Beginning in 2015, the parties shall exchange the first two pages of his/her federal tax returns, forms W-2 and K-1 by April 15th of each year for purposes of determining whether it is appropriate to recalculate child support. In addition, the parties shall recalculate said support upon the twelfth birthday of each child according to the Guidelines.

4.   If applicable, the parties shall share the cost of reasonable work related daycare expenses incurred for the minor children: in proportion to their incomes reflected on the child support worksheet, as may be adjusted from time to time.

5.   The parties shall share the cost of mutually agreed upon extracurricular activities for the children: 60% to be paid by Husband and 40% to be paid by Wife. The parties will confer with each other prior to enrollment.

6.   Husband shall maintain medical insurance for the children if it is available at a reasonable cost, which means health insurance that is employment-related or other group health insurance. Proof of such insurance must be furnished to the other party within 15 days. Husband and Wife shall divide all of the Child's reasonable and necessary medical, dental, orthodontic, optical and counseling expenses, not covered by insurance, 60% to be paid by Husband and 40% to be paid by Wife.

7.   Husband and Wife shall each procure and maintain life insurance in the amount of $250,000 naming the Children as irrevocable beneficiaries with the other parent named as custodian of such funds. This obligation shall terminate when both children are no longer eligible for child support. Upon

termination of insurance obligations under this paragraph, any cash value or investments from the life insurance, and the right to name beneficiaries, shall revert to the owner of the policy.

8.    The parties shall share, with Husband paying 60% of the cost and Wife paying 40% of the cost of the expenses for each child's post-secondary education, insofar as the child shall elect to pursue a post-secondary course of study, gain admission to a post-secondary institution of his choice, and pursue such course of study to a Bachelors degree or equivalent. For the purpose of this agreement, the term "post-secondary education" shall include education at any accredited college or university, or at any trade or vocational/technical institution, offering a course of study beyond the high school level. The cost of such education shall include, without limitation, tuition, room and board, laboratory fee, athletic charges, and reasonable costs to and from the institution attended by the child.

Notwithstanding the foregoing provisions of this paragraph, the obligation shall not exceed the cost of such education as then charged by the University of Maine at its campus in Orono, Maine, for a period of four years, absent a further agreement of the parties.

## IV.    TAX EXEMPTIONS.

Wife shall have the right to claim the children as her dependents for Federal and State income tax purposes. However, Husband shall have the right to purchase the exemption of said child on a yearly basis so long as he is current in his financial obligations to the Wife, by payment to Wife in cash of the total net amount by which Wife's tax liability (in the status to which she is entitled to file in the year in question) would be increased solely due to not claiming the exemption for the child. If Husband so elects and pays said amount, Wife shall sign the proper form which Husband will present to her indicating his right to claim the exemption for that year. Husband shall state his intention to explore this option to the Wife by February 1st yearly and Wife shall submit documentation sufficient to make and verify the calculation to Husband by March 1st. Husband shall make the election by payment in full of the amount due and submission to Wife of the properly completed exemption tax form by March 15th yearly or shall be deemed to have abandoned the election for that year.

For purposes of tax filing status, Husband shall be allowed to be the head of Taylor's household and Wife the head of Lauren's household.

## V.    MEDIATION.

In the event that the parties disagree on any issues relating to the children, the parties will seek the advice of a co-parent counselor or mediator. Each party will have the obligation to participate and to cooperate in scheduling upon the request of the other. The parties shall pay for these services in proportion to their income.

VI.   REAL PROPERTY.

1.   Wife and Husband acknowledge that they are the owners of a parcel of real property and a house in 11 Acorn Lane, Manchester, ME, more specifically described at Book 6829, Page 341 of the Kennebec County Registry of Deeds. By execution of this Agreement, Husband forever quit claims and releases any and all right, title, or interest in the aforesaid property and Wife is hereby the owner of all right, title, and interest in and to the property in accordance with 19-A M.R.S.A. Section 953. This Settlement Agreement shall operate as a complete and final release of any and all interest that Husband has in the property. Wife shall be solely responsible for the payment of the first mortgage secured by the real estate. Husband shall be solely responsible for payment of the Key Bank HELOC secured by the property, the proceeds of which were used for business purposes. Husband shall pay off the HELOC in full within 90 days of the date of this Agreement and shall indemnify and hold Wife harmless from such debt. Wife shall be responsible for all remaining liabilities relating to said property, and shall indemnify and hold Husband harmless from any liability, including attorney's fees and costs.

Wife shall make a good faith effort to remove Husband from liability on the Chase Bank mortgage secured by the residence within 2 years of Husband's payoff of the Key Bank HELOC. Each party shall be authorized to obtain information from the mortgage company/bank regarding payments until he or she is removed from liability. In the event of default, a party may make such payments due and the obligated partyshall reimburse the paying party for expenditures he/she incurs as a result of the default. If Wife has not refinanced at the end of 2 years of Husband's payoff of the KeyBank HELOC, Husband shall have the option of requesting in writing that Wife list the house for sale and Wife shall comply in a commercially reasonable manner. All proceeds from such sale shall be the sole property of Wife.

2.   Wife and Husband acknowledge that they are the owners of a parcel of real property and a house in 179 Loon Cove Lane, Winthrop, ME, more specifically described at Book 5620, Page 43 of the Kennebec County Registry of Deeds. By execution of this Agreement, Husband forever quit

claims and releases any and all right, title, or interest in the aforesaid property and Wife is hereby the owner of all right, title, and interest in and to the property in accordance with 19-A M.R.S.A. Section 953. This Settlement Agreement shall operate as a complete and final release of any and all interest that Husband has in the property.

Wife shall make a good faith effort to remove Husband from liability on the CitiMortgage mortgage secured by the residence within 1 year of Husband's payoff of the Key Bank HELOC secured by the Acorn Lane property. Husband shall be authorized to obtain information from the mortgage company regarding payments until he is removed from liability. In the event of default, Husband shall make such payments due and Wife shall reimburse Husband for expenditures he incurs as a result of the default. If Wife has not refinanced at the end of 1 year, Husband shall have the option of requesting in writing that Wife list the house for sale and Wife shall comply in a commercially reasonable manner. All proceeds from such sale shall be the sole property of Wife.

Wife shall be solely responsible for the payment of any and all other liabilities relating to the real property allocated to her, and shall indemnify and hold Husband harmless from any liability, including attorney's fees and costs. If Husband has to pay any expenses related to the real estate allocated to Wife herein, he may deduct and amount equal to those paid expenses from the child support, spousal support, or both obligations (if needed) he pays to Wife pursuant to this agreement.

3. Wife shall be responsible for preparation and recording of any deeds or abstracts necessary to accomplish the transfer of these properties.

VII. TANGIBLE PROPERTY.

1. Household Equipment and Furnishings. With the exception of the grand piano and exercise equipment, which are allocated to Husband, Wife shall be the sole owner of the household equipment and furnishings in her possession at the time of this Agreement and Husband shall be the sole owner of household equipment and furnishings in his possession. The parties release each other from any claims of right, title or interest in the property given to the other.

2.    <u>Automobiles</u>. Wife shall be the sole owner of the 2007 Lexus RX 350. Wife shall be responsible for all insurance and expenses related to her vehicle and shall indemnify and hold Husband harmless from any obligations thereon. Husband shall be the sole owner of the 2005 Nissan Armada, 1986 Porsche 911, and the 1992 Stingray. Husband shall be responsible for all debt, insurance and expenses related to his vehicles and shall indemnify and hold Wife harmless from any obligations thereon.

## VIII.    <u>INTANGIBLE PERSONAL PROPERTY</u>.

1.    <u>Bank Accounts and Stocks</u>. Husband and Wife shall each be the sole and exclusive owner of all checking, savings, stock or other financial accounts held in his or her own name. The Edward Jones account shall be divided equally between the parties.

2.    <u>Retirement Accounts</u>. Wife shall be the sole owner of her IRA and her 401(k), free and clear of any right, title, interest or claim of Husband and Husband hereby waives all of his right, title, interest and claim to the accounts. Husband shall be the sole owner of his 401(k), free and clear of any right, title, interest or claim of Wife and Wife hereby waives all of her right, title, interest and claim to the account.

3.    Except as otherwise specified herein, Wife shall retain as her sole and exclusive property all items of intangible personal property, including but not limited to bank accounts, money market accounts, certificates of deposit, stocks, bonds, securities, irrevocable trusts, revocable intervivos trusts, or testamentary trusts which are currently in the possession of Wife, in which she has an interest, or over which she has control.

4.    Except as otherwise specified herein, Husband shall retain as his sole and exclusive property all items of intangible personal property, including but not limited to bank accounts, money market accounts, certificates of deposit, stocks, bonds, securities, irrevocable trusts, revocable intervivos trusts, or testamentary trusts which are currently in the possession of Husband, in which he has an interest, or over which he has control.

## IX.    <u>INSURANCE</u>.

1.    <u>Maintenance of Life Insurance</u>. Husband shall maintain of life insurance sufficient to pay his outstanding spousal support obligation contained in this Agreement (in decreasing amounts as his obligations are paid over time) on his life, free of loans or other encumbrances, in sufficient amount    The

Husband shall have the option of establishing a life insurance trust to which the proceeds of said life insurance will be paid. The Trustee will be obligated to discharge the obligations of Husband pursuant to this Agreement with said proceeds. Husband shall provide to Wife proof that such insurance is in full force and effect upon reasonable written notice. In the event Husband's life insurance is insufficient to pay the obligations of Husband, Wife shall have a claim against Husband's estate.

2.    <u>Life Insurance</u>. Each party is awarded any and all life insurance policies presently owned by that party.

3.    <u>Health Insurance</u>. Husband and Wife shall each be responsible for his or her own health insurance as of January 1, 2014.

X.    <u>DEBTS</u>.

1.    Wife and Husband shall each be responsible for paying the debts standing in his or her own name.

2.    Husband shall be responsible to pay the obligations owed to Eugene Green and for the business interests allocated to him.

3.    Husband shall remove Wife from any and all contingent liability on all mortgages, debt and liens associated with the real and personal property allocated to him herein, no later than December 31, 2013. This responsibility includes, but is not limited to, the outstanding Kennebec Savings Bank and Key Bank mortgages and lines of credit.

4.    Except as provided herein, the parties shall be responsible for any debts they each incurred during the pendency of the divorce and thereafter. The parties represent and warrant to each other that he or she has not incurred any debts or made any contract for which the other party or his or her estate might or could become liable and that he or she will not hereafter incur any liabilities whatsoever upon the credit of the other party. Throughout this Agreement, when one party agrees to assume responsibility for paying a debt or undertaking any other obligation, that party also agrees to indemnify and hold the other party harmless therefrom. To the extent the indemnification needs to be enforced, the obligated party shall also pay the attorneys' fees and costs associated with enforcing the Agreement in that regard.

XI.    <u>BUSINESS INTEREST</u>.

1.    Husband shall be awarded the following businesses:

   a.    Peary Group, LLC that is the owner of real property located at 23 –
         29 Bowdoin Street, ~~Augusta~~, *Manchester* Maine, more particularly described in
         a deed dated ___01/01/11___ and recorded in the Kennebec
         County Registry of Deeds in Book *10757*, Page _167_

   b.    D&G Real Estate, LLC that is the owner of real property located at
         811 Western Ave, Treasure Lane and U 19-007-00A, ~~Augusta~~, *Manchester*
         Maine, more particularly described in deeds dated *03/30/2007 and*
         *06/01/2011* and recorded in the Kennebec County Registry of
         Deeds in Book *9301*, Page *273; Book 10769, Page 56 and*
         *Book 10752, Page 329.*

Wife waives any right, title or interest she may have in any of these
businesses, together with any assets.  Husband shall indemnify and hold
Wife harmless from any and all indebtedness encumbering said real property
to the extent she may become personally liable.

2.    Husband has interest the following businesses:

   a.    Optimizing Outcomes, LLC (67%)
   b.    Manchester Osteopathic Healthcare (100%)
   c.    Jorgensen Consulting, LLC (100%)
   d.    Manchester Diagnostics (50%)
   e.    Northern New England Primary Care, LLC (100%)
   f.    Tarpon, LLC (33.33%)

Any interest of the parties in these businesses, including but not limited to
stock and all assets, is set aside to Husband as his sole and separate
property, free and clear of any claim or interest of Wife.  It is the intent of
the parties that any property and/or asset relating in any way to the
businesses to set aside to Husband as his sole and separate property, free
and clear of any claim or interest of Wife.  Husband agrees to assume and
be solely responsible for all debts and liabilities of the businesses and to
indemnify and hold Wife harmless from the same.

XII.    SPOUSAL SUPPORT.

Husband shall pay spousal support to Wife in accordance with 19-A M.R.S.A.
Section 951.  The amount owed shall accrue as follows:

Transitional support shall be paid in the amount of $1,250.00 per month from June 1,

2013 through December 31, 2013, and 4,000 per month from January 1, 2014 to June 31, 2014. (For tax year, 2013, a total of $8,750 in spousal support).

General support shall be paid in the amount of $3,333.33 per month from July 1, 2014 until December 31, 2022 ($40,000 per year for 7.5 years), decreasing in amount to $2,083 per month beginning on January 1, 2023 and terminating on December 31, 2024 ($25,000 per year for 2 years).

Both parties agree and acknowledge that the property division herein, given the information available and present at the time of settlement and divorce, informed their decision regarding on going spousal support terms and amount. With that understanding firmly in mind, the parties agree that spousal support shall terminate absolutely on the first to occur of Wife's death, or December 31, 2024.

Further, spousal support shall not be increased or decreased under any circumstances or conditions, except, Husband may seek to have it decreased after December 31, 2019 on the condition that Wife has remarried. Other than the fact of Wife's remarriage, spousal support may not be modified in term or amount under any future circumstances or conditions.

Spousal support shall be included in the income of Wife in accordance with Section 71 of the Internal Revenue Code and shall be deductible by Husband in accordance with Section 215 of the Internal Revenue Code. Spousal support shall terminate upon the death of Wife or upon the death of Husband so long as he has provided sufficient life insurance coverage to secure his obligation.  If Husband does not have sufficient life insurance coverage, Wife may make a claim against his estate.

XIII.   ATTORNEY FEES.

Each of the parties shall be solely responsible for paying his and her respective attorney fees and costs incurred in connection with this divorce.

XIV.   COVENANT OF COOPERATION.

The parties shall execute any and all further documents which may be necessary to effectuate, ratify, or confirm the transfer of ownership of any property or rights provided hereunder.

XV.   WAIVER AND MODIFICATION.

No waiver of any breach by either party to this Agreement shall be deemed a waiver of any subsequent breach.  No modification of this Agreement shall be binding upon either

party unless reduced to writing and signed and subscribed to by both of the parties, or unless ordered by a court of competent jurisdiction over this matter in appropriate proceedings.

## XVI.   RELEASE.

Expressly conditional upon compliance with this Agreement and upon approval by a court of competent jurisdiction, each party shall be fully released by the other, and each party does fully release the other, from any and all obligations for alimony, support and maintenance, tort claims or any other civil claim against each other except as provided herein, and each accepts the provisions herein in full and complete satisfaction of all claims against the other arising out of the marital relationship of the parties.   Expressly conditional upon compliance with this Agreement and court approval as aforesaid, each party further releases any rights or claims in the earnings, accumulations, interests in trust, money, securities and property, real, personal or mixed, of the other, arising out of the marital relationship, except as provided for in this Agreement.

## XVII.   PROPERTY NOT SPECIFICALLY MENTIONED.

Except as otherwise provided in this Agreement, each of the parties is and will continue to be the sole and absolute owner of (i) all real and personal property, whether tangible or intangible, and all interest in such property whether legal, beneficial or equitable, titled separately in his or her name; and (ii) all personal property in that party's possession as of the date the Divorce Judgment becomes final.

## XVIII.   ADVICE OF COUNSEL.

Each party herein declares that he or she has had an opportunity to gain independent legal advice by counsel of his or her own selection; that each fully understands the facts and is fully informed of all legal rights and liabilities; that each believes this Agreement to be fair, just and reasonable; and that each signs this Agreement freely and voluntarily. Each of the parties has been fully advised of his or her legal rights, duties and obligations, and of the legal and practical effect of this Agreement, and has been advised of the parties' property rights, and properties, income and expectancies.   The parties warrant and represent that each has fairly and adequately presented his or her marital assets and liabilities and the value thereof as of the date of this Agreement; that there has been no material change in their assets or liabilities since that date; and that they understand that each has relied upon there representations in entering into this Agreement.

## XIX.   BINDING EFFECT.

Except as otherwise stated herein, all the provisions of this Agreement shall be binding upon the respective heirs, next of kin, personal representatives, executors and administrators of the parties.

XX.   COMPLETE DISCLOSURE.

The parties agree that in entering into this Agreement, they have made complete disclosure to the other of all assets and liabilities and have not concealed any assets and liabilities. Failure to so disclose completely shall be grounds treating undisclosed property as omitted property at the non-omitting party's choice.

XXI.   BREACH OF AGREEMENT.

In the event that either party breaches this agreement, they may seek as a remedy enforcement under the divorce judgment or the agreement itself. The breaching party agrees to reimburse the non-breaching party for reasonable attorneys fees expended as a result of obtaining enforcement or remedy.

XXII.   INCORPORATION OF AGREEMENT AND DECREE; GROUNDS.

It is the intention, desire and contract of the parties that in the event a Judgment of Divorce is granted at any time within ninety (90) days from the date of this Agreement, the parties shall request that this Agreement, without modification, be approved and incorporated into the decree, and after incorporation, this Agreement shall in addition have continuing and independent legal effect. Any decree incorporating the terms hereof shall be on the grounds of irreconcilable differences.

IN WITNESS WHEREOF, the parties have signed this Agreement as of this _26_ day of _November_ , 2013.

_____
Douglas Jorgensen, Plaintiff


_____
Wendy Jorgensen, Defendant


STATE OF MAINE
Cumberland, ss                              Date:

-13-

Except as otherwise stated herein, all the provisions of this Agreement shall be binding upon the respective heirs, next of kin, personal representatives, executors and administrators of the parties.

XX.    COMPLETE DISCLOSURE.

The parties agree that in entering into this Agreement, they have made complete disclosure to the other of all assets and liabilities and have not concealed any assets and liabilities. Failure to so disclose completely shall be grounds treating undisclosed property as omitted property at the non-omitting party's choice.

XXI.    BREACH OF AGREEMENT.

In the event that either party breaches this agreement, they may seek as a remedy enforcement under the divorce judgment or the agreement itself. The breaching party agrees to reimburse the non-breaching party for reasonable attorneys fees expended as a result of obtaining enforcement or remedy.

XXII.    INCORPORATION OF AGREEMENT AND DECREE; GROUNDS.

It is the intention, desire and contract of the parties that in the event a Judgment of Divorce is granted at any time within ninety (90) days from the date of this Agreement, the parties shall request that this Agreement, without modification, be approved and incorporated into the decree, and after incorporation, this Agreement shall in addition have continuing and independent legal effect. Any decree incorporating the terms hereof shall be on the grounds of irreconcilable differences.

IN WITNESS WHEREOF, the parties have signed this Agreement as of this _26_ day of _November_, 2013.

_____
Douglas Jorgensen, Plaintiff

_____
Wendy Jorgensen, Defendant

STATE OF MAINE
Cumberland, ss                              Date:

-13-

Personally appeared before me the above-named Douglas Jorgensen, and acknowledged this instrument to be his free act and deed.

_____
Notary Public/Attorney at Law


STATE OF FLORIDA
Volusia County                        Date: *11-26-13*

Personally appeared before me the above-named Wendy Jorgensen, and acknowledged this instrument to be her free act and deed.

_____
Notary Public/Attorney at Law

DEBRA L. AVERA
MY COMMISSION # EE 029850
EXPIRES: January 25, 2015
Bonded Thru Notary Public Underwriters

-14-

Personally appeared before me the above-named Douglas Jorgensen, and acknowledged this instrument to be his free act and deed.

Notary Public/Attorney at Law
My Commission Expires 8/2/17
ST OF ME

STATE OF FLORIDA
Volusia County

Date: 11-26-13

Personally appeared before me the above-named Wendy Jorgensen, and acknowledged this instrument to be her free act and deed.

DEBRA L. AVERA
MY COMMISSION # EE 029850
EXPIRES: January 25, 2015
Bonded Thru Notary Public Underwriters

Notary Public/Attorney at Law

-14-

STATE OF MAINE                                    DISTRICT COURT
KENNEBEC, ss.                                     LOCATION: AUGUSTA
                                                  DOCKET NO. FM-13-171

```
                              )
                              )
DOUGLAS JORGENSEN,            )
            Plaintiff         )          DIVORCE JUDGMENT/
                              )          REFEREE'S REPORT
v.                            )
                              )
WENDY JORGENSEN,             )
            Defendant         )
```

By an Order of the Kennebec County District Court dated August 7, 2013, the undersigned Kristin Gustafson, Esq. was appointed Referee pursuant to Rule 53(e) of the Maine Rules of Civil Procedure and authorized to conduct all further proceedings in the above-captioned divorce action.

The parties entered into a Marital Settlement Agreement dated November 2013, (hereinafter "Settlement Agreement"), attached hereto as Exhibit A.

The Referee hereby issues the following Report:

1.  <u>Divorce</u>. A divorce from the bonds of matrimony is hereby ordered and adjudged to this Plaintiff and Defendant for the cause of irreconcilable marital differences.

2.  <u>Settlement Agreement</u>. The aforesaid Settlement Agreement executed by the parties, is approved and ratified by the Referee. The Settlement Agreement is incorporated into this Judgment, but shall survive with continuing and independent legal effect.

3.  <u>Parental Right and Responsibilities</u>. All parental rights and responsibilities regarding the minor children, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓ shall be shared between the parties in accordance with the Settlement Agreement.

The parties shall share the provision of a residence for the children in accordance with the terms of the Settlement Agreement.

STATE OF MAINE
KENNEBEC, ss.

DISTRICT COURT
LOCATION: AUGUSTA
DOCKET NO. FM-13-171

DOUGLAS JORGENSEN,              )
                               )
                Plaintiff      )
                               )
v.                             )           ORDER
                               )    FOR ENTRY OF JUDGMENT
WENDY JORGENSEN,               )
                               )
                Defendant      )

UPON RECEIPT of the Referee's Report dated December 18, 2013, filed pursuant to
the Order of Reference dated August 7, 2013, it is hereby ORDERED and ADJUDGED that:

The Referee's report dated December 18, 2013, is accepted and entered as the
Judgment of Divorce pursuant to, M.R.Civ.P. 53 and 19-A M.R.S.A. Section 252.

The Clerk of Court is specifically directed to enter the Judgment on the Civil Docket by
notation incorporating it by reference pursuant to M.R.Civ.P. 79(a).

DATED:    12/23/13

_____
Judge/Family Law Magistrate
Maine District Court

NOTICE

IF THIS ORDER IS SIGNED BY A FAMILY LAW MAGISTRATE, then pursuant to
Title 4 M.R.S.A. §183(1)(E) and M.R.Fam.Div. III(G)(2), you are hereby notified that a party
may appeal by filing an objection in the manner specified by M.R.Fam.Div. III(G)(2) within 21
days from the date the judgment is signed.

If no objection is filed, the parties are deemed to have waived their right to object and to
appeal, and the Family Law Magistrate's Order shall become the final judgment of the court and
have the same effect as any final judgment signed by a District Court Judge.

Defendant is responsible for filing an Abstract of Divorce Decree in the Kennebec County Registry of Deeds.

6.      Personal Property.  All property and debts shall be divided pursuant to the terms of the Settlement Agreement.

7.      Bank and Retirement Accounts.  The parties' financial accounts shall be set aside to each party in accordance with the terms of the Settlement Agreement.

8.      Spousal Support.  Spousal Support shall be paid in accordance with the terms of the Settlement Agreement.

It is FURTHER ORDERED that the remaining terms of the Settlement Agreement shall be incorporated herein by reference, but shall survive the Referee's Report as a document with independent significance.

The Clerk is specifically directed to enter this Judgment on the Civil Docket by notation incorporating it by reference pursuant to M.R.Civ.P. 79(a).

Dated: *December 18, 2013*

Kristin Gustafson, Esq., Referee

Shared parental rights and responsibilities means that most or all aspects
of a child's welfare remain the joint responsibility and right of both
parents, so that both parents retain equal parental rights and
responsibilities, and both parents confer and make joint decisions
regarding the child's welfare. Matters pertaining to the child's welfare
include, but are not limited to, education, religious upbringing, medical
dental and mental health care, travel arrangements, child care
arrangements and residence. Parents who share parental rights and
responsibilities shall keep one another informed of any major changes
affecting the child's welfare and shall consult in advance to the extent
practicable on decisions related to the child's welfare.

A parent who intends to relocate the residence of a child or children
subject to this Order must provide the other parent prior notice at least 30
days, the parent who is relocating shall provide notice as soon as possible
to the other parent. If the parent who is relocating believes notifying the
other parent will cause danger to the parent or child, the parent shall notify
the District Court of the intended relocation, and the District Court shall
provide appropriate notice to the other parent in a manner determined to
provide safety to the relocating parent and child.

Violation of this Order may result in a finding of contempt and the
imposition of sanctions as provided in 19 M.R.S.A. Section 752(6-A)
which may include one or more of the following: (1) require additional or
more specific terms and conditions consistent with this order; (2) order
that additional visitation be provided for a parent to take the place of
visitation that was wrongfully denied; and (3) order a parent found in
contempt to pay a fine of at least $100.00.

4.    Child Support. The terms for child support are set forth in the Settlement
Agreement and Child Support Order issued on this date, which is made a
part of this Judgment.

5.    Real Property. The parties' real estate as described herein shall be set
apart to each according to the terms of the Settlement Agreement;

a.  Real estate located at 11 Acorn Lane, Manchester, Maine, and more
specifically described at Book 6829, Page 341 of the Kennebec
County Registry of Deeds.

b.  Real estate located at 179 Loon Cove Lane, Winthrop, Maine, and
more specifically described at Book 5620, Page 43 of the Kennebec
County Registry of Deeds.

SUPERIOR COURT

_____, ss

Docket No.: _____

_Douglas Jorgensen_ _____ Plaintiff

v.

_Wendy Jorgensen_ _____ Defendant

DISTRICT COURT

Location: _Augusta_

Docket No.: _FM-13-171_

**CHILD SUPPORT ORDER**

☐ Interim ☒ Final ☐ Amended

☐ Corrected

1. This Child Support Order is made a part of the ☒ Divorce Judgment ☐ Protection from Abuse Order ☐ Parental Rights and Responsibilities Judgment ☐ Paternity Judgment ☐ Case Management Order ☐ Other _____ ☒ of this date ☐ dated _____

2. Pursuant to 19-A M.R.S. § 2006, the court has made certain findings of fact concerning the current parental support obligation as computed under the presumptive application guidelines. Those findings are contained within the child support worksheet that is attached and incorporated. _Douglas Jorgensen_ is ordered to pay to _Wendy Jorgensen_

_Name of Obligor_ _Name of Obligee_

the sum of $ _2,750_ per week/biweekly/~~monthly~~ toward the support of:

| Child's Name | Date of Birth | Child's Name | Date of Birth |
|---|---|---|---|
| ▓▓▓▓▓▓ | ▓▓▓▓▓ | | |
| | | | |

3. The child support payments are to start _1/3/14_. If a child receives public assistance, the child support payments for that child shall be made to the State of Maine Department of Health & Human Services.

☐ 4. The Court finds that the child(ren) currently receive(s) dependent benefits as a result of the obligor's disability. In any month that the benefits received by the child(ren) meet or exceed the total monthly support obligation, the obligor shall receive a credit for the total amount of support due. To the extent that the monthly benefits received by the child(ren) do not satisfy the obligor's monthly support obligation, the obligor shall pay the monthly support obligation minus the credits received by the child(ren). The obligor shall not be given credit toward past or future obligations for benefits which exceed the current monthly support obligation.

☐ 5. The child support obligation shall remain in effect until _____ (further order or until expiration of any underlying Protection from Abuse Order, whichever occurs first).

☒ 6. The child support obligation shall continue for each child until that child reaches the age of 18; provided, however, that if the child has not graduated, withdrawn, or been expelled from secondary school as defined in Title 20-A, the child support shall continue until the child graduates or reaches the age of 19, whichever occurs first.

☒ 7. ☒ Plaintiff ☐ Defendant ☐ Either party (the party who can obtain health insurance FIRST at reasonable cost) shall obtain and maintain private health insurance for the benefit of the minor child(ren) if it is presently available at reasonable cost. If it is not presently available at reasonable cost then private health insurance for the benefit of the minor child(ren) shall immediately be obtained and maintained when it becomes available at reasonable cost. Proof of such insurance must be furnished to the other party within 15 days of receipt of a copy of this order, or if the insurance is not presently available, within 15 days of the date it becomes available. If the child(ren) is (are) recipients of public assistance, proof of such insurance shall be provided to the Department of Health & Human Services within 15 days.

☒ 8. Any uninsured medical expenses of the child(ren), in excess of $250 per calendar year, shall be paid in the following manner: _60_ % by the obligor and _40_ % by the obligee. The first $250 of annual uninsured medical expenses shall be paid by the obligee.

☐ 9. The child support obligation is based on the fact the parents are providing substantially equal care for their child(ren). Day care costs, health insurance premiums, and uninsured medical expenses shall be shared as follows: _____% to be paid by the higher income parent and _____% to be paid by the lower income parent. ☐ Each party's proportionate share will be as follows:

_____
_____
_____
_____

FM-132, Rev. 11/20/13

If the Maine Department of Health & Human Services provides support enforcement services and/or the obligor is required to pay child support to the Maine Department of Health & Human Services, the obligor shall notify the Department within 15 days of the date of this Order of the following: 1. The obligor's current address; 2. The name and address of the obligor's current employer, and 3. Whether the obligor has access to health insurance at a reasonable cost; and, if so, the health insurance policy information.

Within 15 days of any change in the obligor's current address, any change in the name or address of the obligor's current employer, or any change in the health insurance policy information, the obligor shall notify the Department of the change. **Failure to report a change of address or employer to the Department within 15 days of such change is a civil violation for which a forfeiture not to exceed $200 may be adjudged for each violation.**

Any party to this action may file with the court a Motion to Modify asking the court to review the amount of child support and if appropriate, to modify it in accordance with the state's child support guidelines. If it has been less than 3 years since the child support order was issued or modified, the party must prove a substantial change in circumstances.

☐     10. There is/are _____ children is is/are 10 or 11 years of age. Beginning _____ when _____ reaches the age of 12 years, the child support will be $ _____ per week/biweekly. Beginning _____ when _____ reaches the age of 12 years, the child support will be $_____ per week/biweekly.

☐     11. All of the minor children are age 12 or older. As long as there are _____ children entitled to parental support, that sum is $_____ per week/biweekly. As long as there are _____ children entitled to parental support, that sum is $_____ per week/biweekly. When only one child is entitled to parental support, the sum is $_____ per week/biweekly.

☐     12. The amount(s) set forth above for child support constitute(s) a deviation from the presumptive amount required by the child support guidelines. In this case the court finds that a child support order based on the guidelines would be inequitable or unjust for the following reasons: *(Set forth the reasons for the deviation.)* _____ _____

☐     13. This Order is subject to Immediate Income Withholding as of this date (See Notice below)(If not, see 14 below).

**Notice to Parties Regarding Immediate Income Withholding.** Immediate income withholding can only be implemented by serving an attested copy of the support order, along with the notice required under § 2655, upon the obligor's payor of income. Notwithstanding this subsection, the department may implement immediate income withholding by serving the notice required under § 2655 upon the obligor's payor of income without providing an attested copy of the support order. Any party can obtain the payor notice required under § 2655 by contacting the Department of Support Enforcement & Recovery at 207-624-4100 or http://www.maine.gov/dhhs/ofi/dser/announcements.html. The notice for income withholding may be used to collect arrearages in addition to current support. The amount of withholding may not exceed the limitations imposed by Title 15 United States Code, Section 1673(b); and the payor of income shall withhold and send to the department a fee of $2 per week in addition to the amount withheld for child support.

☒     14. Other: *Payments shall be made by direct deposits*

To the extent any previous Orders are in conflict with this Order, this Order has controlling authority.

This Order is incorporated into the docket by reference at the specific direction of the court. ☐ "Immediate Income Withholding Order" incorporated herein.

Date: *1/2/14*                       _____
                                           Judge/Justice/Magistrate

A True Copy, Attest _____
                Clerk

**Important Notice to the Parties**

Any party who wishes to appeal a Magistrate's final order shall file an objection to the final order in the District Court within 21 days of the entry of that order. The court clerk's office has a form available for this purpose. If no objection is filed, the parties are deemed to have waived their right to object and to appeal, and the Magistrate's final order shall become the judgment of the court and have the same effect as any final judgment signed by a District Court judge. No appeal may be taken from a judgment entered without objection to the final order of a Magistrate. An appeal fro a judgment entered after objection shall be taken in accordance with the Maine Rules of Appellate Procedure.

Any party who wishes to appeal a final order of a judge or justice shall file a Notice of Appeal within 21 days.